<u>**FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| L.S. and R.S. on behalf of S.S., an infant, and individually, | |
| Plaintiffs, | Civ. No. 09-3052 (DRD) |
| v. | **O P I N I O N** |
| MOUNT OLIVE BOARD OF EDUCATION, MICHAEL IANNUCCI, AUDREY STRAHL, CHRISTOPHER BOSCH, JULIAN JOHNSON, KEVIN STANSBERRY, ROSALIE LAMONTE, individually and as employees of the Mount Olive Board of Education, and John Does 1-10, | |
| Defendants. | |

*Appearances by:*

KIRSCH, GARTENBERG & HOWARD, ESQS.
By: Thomas S. Howard, Esq.
Two University Plaza
Hackensack, NJ 07601

   *Attorneys for Plaintiffs,*

METHFESSEL & WERBEL, PC
By: Eric L. Harrison, Esq.
Suite 300
P.O. Box 3012
Edison, NJ 08818-3012

*Attorneys for Defendants.*

**<u>DEBEVOISE, Senior District Judge</u>**

This matter arises out of the ill-conceived notion to use a 10th grade student's confidential psychiatric evaluation as a tool to teach the famous J.D. Salinger novel, *The Catcher in the Rye* to an 11th grade English class.

On June 23, 2009, R.S. and L.S., individually, and on behalf of their son, S.S., filed a Complaint against the Mount Olive Board of Education ("the Board), Michael Iannucci, Audrey Strahl, and Christopher Bosch, alleging violations of (1) S.S.'s constitutional rights under 42 U.S.C. § 1983 ("Section 1983"); (2) the New Jersey Constitution and the New Jersey Pupil Records Act ("NJPRA"), N.J.S.A. 18A:35-19; (3) the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, and Health Insurance Portability and Accountability Act ("HIPAA"), 29 U.S.C. § 1181; and (4) general negligence principles, and seeking compensatory and punitive damages.  Plaintiffs amended the Complaint on March 23, 2010 to join Julian Johnson, Kevin Stansberry, and Rosalie Lamonte as defendants.

Defendants now move for summary judgment on all of Plaintiffs' claims, except those against Mr. Bosch and Mr. Johnson for negligence.  In doing so, they contend that (1) L.S. and R.S. failed to establish a prime face case under Section 1983 in their individual capacities; (2) Plaintiffs failed to establish a violation of S.S.'s constitutional rights under the First and Fourth Amendments; (3) Plaintiffs failed to state a claim under Section 1983 against all Defendants for the violation of S.S.'s constitutional right to privacy under the Due Process Clause of the Fourteenth Amendment; (4) Plaintiffs failed to state a claim under the New Jersey Constitution against all Defendants; (5) Plaintiffs failed to state a claim under the NJPRA, IDEA, FERPA,

and HIPAA; and (6) Plaintiffs failed to state a claim for negligence against all Defendants except Mr. Johnson and Mr. Bosch.

In addition, Plaintiffs cross-move for partial summary judgment in favor of their claims against Mr. Johnson and Mr. Bosch for violations of S.S.'s right to privacy under the United States and New Jersey Constitutions, as well as those for negligence against all Defendants. In doing so, they argue that (1) the undisputed evidence indicates that Mr. Johnson's and Mr. Bosch's conduct deprived S.S. of his right to privacy under the Due Process Clause of the Fourteenth Amendment and Article I, Paragraph 1 of the New Jersey Constitution; and (2) Defendants' violation of the NJPRA, IDEA, FERPA, and HIPAA constitute negligence *per se*.

For the reasons set forth below, Plaintiffs' and Defendants' motions are granted in part and denied in part. L.S. and R.S.'s claims under Section 1983 are dismissed because they failed to establish a violation of their constitutional rights in their individual capacities. Plaintiffs' claims under Section 1983 for violations of the First and Fourth Amendments are dismissed because they failed to establish a violation of their rights under those amendments.

Plaintiffs are entitled to summary judgment in favor of the liability portions of their claims under Section 1983 against Mr. Johnson and Mr. Bosch for the violation of S.S.'s constitutional right to privacy, as well as their parallel claims under the New Jersey Constitution, because the undisputed evidence shows that the disclosure of S.S.'s confidential psychiatric evaluation was intentional. However, such claims are dismissed with respect to Mr. Iannucci, Ms. Strahl, Mr. Stansberry, and Ms. Lamonte because there is no evidence that either had any personal involvement, knowledge of, or acquiescence in the disclosure of S.S.'s evaluation. Such claims are also dismissed as against the Board because there is no evidence of a policy or

custom, or failure to supervise or train, that exhibited a deliberate indifference towards S.S.'s constitutional rights.

Plaintiffs' claims under the NJPRA, IDEA, FERPA, and HIPAA are dismissed because the NJPRA, FERPA, and HIPAA do not provide for a private right of action altogether, while the IDEA does not provide a private right of action for damages.  Finally, Plaintiffs are entitled to summary judgment in favor of the liability portion of their negligence claims against Mr. Johnson and Mr. Bosch, not because the violations of the NJRPA, IDEA, FERPA, and HIPAA constitute negligence *per se*, but that no reasonable juror could find that they did not breach a duty of care owed to S.S.

## I. BACKGROUND

S.S. is a high school student in the Mount Olive school district that has struggled with diabetes and anxiety since the third grade.  He was first diagnosed with diabetes in March 2002, at the age of nine.  In the following years, S.S., his parents, and doctors attempted to manage his diabetes with mixed results.  On several occasions, S.S. experienced dangerously high blood sugar levels, and even went into diabetic shock.  In addition, S.S. missed significant portions of school, complaining about abdominal pains, sore throat, nausea, headaches, and fatigue.  His doctors and parents further observed that he was exhibiting symptoms of depression and a general phobia of attending school—completing substantial portions of the seventh, eighth, and ninth grades through home instruction at a local library.  He attended just three days of the tenth grade before resuming home instruction.

On October 21, 2008, S.S.'s parents, L.S. and R.S., attended a meeting with Michael Iannucci, Director of Special Services for the Board, Deborah Kuzma, Vice Principal of Mount Olive High School, Judy Sarubbi, S.S.'s guidance counselor, a Mrs. Pasquelone, S.S.'s English

teacher, Julian Johnson, a social worker employed by the Board and S.S.'s case manager, and Jodi Martino, a social worker, via telephone, to develop an educational plan for S.S. under Section 504 of the Rehabilitation Act.  That same day, Christopher Bosch, a special education instructor assigned to the classroom of Audrey Strahl, an English teacher at Mount Olive High School, was helping Ms. Strahl teach the famous J.D. Salinger novel, *The Catcher in the Rye*, to a class of 11th grade special education students.  As an exercise, those students were instructed to prepare a psychological or psychiatric evaluation on Holden Caulfield, the novel's protagonist.

Prior to the meeting between S.S.'s parents and the aforementioned individuals, Mr. Bosch approached Mr. Johnson in his office to ask for assistance in securing a sample psychological or psychiatric evaluation to distribute to Ms. Strahl's students as a guide in preparing their own reports.  Shockingly, Mr. Johnson offered S.S.'s psychiatric evaluation to Mr. Bosch and instructed him to delete any information that would personally identify S.S.[1]  Mr. Bosch made a redacted copy of the evaluation and returned the original to Mr. Johnson.  He then distributed copies of the redacted evaluation to Ms. Strahl's students to be used as a template.

Mr. Bosch's redactions were as ill-conceived as the notion to distribute S.S.'s evaluation in the first place: significant information about S.S.'s background and medical conditions was left in the document, including the fact the S.S. had been on home instruction, S.S.'s age, religion, grade, family members, physical conditions, past medical and psychiatric history, examinations, and diagnoses.  W.P., one of Ms. Strahl's students that received the redacted evaluation, and a friend of S.S., recognized that the information in the evaluation pertained to S.S.  Accordingly, he asked Mr. Bosch if the evaluation, in fact, belonged to S.S.  Mr. Bosch said it did not and continued with the lesson.

---

[1] In preparation for the meeting with S.S.'s parents, Mr. Johnson removed a copy of S.S.'s comprehensive file, which included S.S.'s psychiatric evaluation, dated April 27, 2007, from a locked cabinet in his office.

After class, W.P. encountered R.S. and L.S., who were leaving their meeting, and told them that S.S.'s evaluation had been passed out in class as part of an assignment.  He then gave them his copy of the redacted evaluation.  As a result, they alerted the Mount Olive High School administration, who promptly collected and destroyed all copies of the evaluation.

The parties dispute the effect of this debacle on S.S.  Plaintiffs contend that "S.S. reacted with disbelief, shock and embarrassment," and became too scared to attend school at all.  (Pl.'s Br. Summ. J. 9.)  In addition, they argue that S.S. became generally reclusive, withdrawn, and asocial.  In contrast, Defendants maintain that S.S. was largely unaffected because he believed that most of his friends either did not read his evaluation or realize that it was his in the first place.

The following day, R.S. and L.S. filed an administrative complaint with the New Jersey Department of Education ("the Department") for breach of confidentiality of S.S.'s student records.  On January 26, 2009, the Department issued a written report in response to the administrative complaint.  In that report, the Department determined that the Board's personnel had breached the confidentiality of S.S.'s student records.  In addition, the Department found that "district personnel are uninformed of the importance of maintaining the privacy of potentially disabled students and the confidentiality of the records of those students.  Therefore, corrective action is required to ensure that no similar incident will ever occur."  (Pl.'s Br. Summ. J., Ex. 26.)  As a result, the Department directed the District to create and implement procedures to prevent against the future disclosure of confidential student records.

To be sure, the Board maintains a privacy policy to protect the confidentiality of student records, including S.S.'s evaluation.  (Pl.'s Br. Summ. J., Ex. 13.)  However, Plaintiffs contend that the disclosure of S.S.'s evaluation was a direct result of the failure to properly implement the

privacy policy.  In doing so, they point to a corrective action plan initiated by the Board in April 2002 "to address concerns regarding the signing of access sheets to confidential student records," (Pl.'s Br. Summ. J. 11),  as well as (1) instances where certain defendants were unable to recall specific provisions of the privacy policy or identify where they could find the policy at their depositions; (2) instances where authority to maintain the confidentiality of student records was delegated to personnel that did not receive personal training in the privacy policy; (3) instances where the written agendas of certain faculty meetings did not specifically refer to maintaining the confidentiality of student records or the privacy policy; and (4) the absence of a clear reference to the privacy policy or student record confidentiality in the faculty handbook.  To further support this contention, Plaintiffs allege that (5) Ms. Lamonte never read the Board's privacy policy; (6) that she failed to personally train Mr. Iannucci in the privacy policy so that he could, in turn, properly train Mr. Bosch and Mr. Johnson in maintaining the confidentiality of student records; and (7) that the training sessions conducted by Mr. Iannucci to maintain the confidentiality of student records were inadequate.

On June 23, 2009, Plaintiffs filed a Complaint against the Board, Michael Iannucci, Audrey Strahl, and Christopher Bosch, alleging causes of action under (1) Section 1983 for the violation S.S.'s constitutional right to privacy under the Fourth and Fourteenth Amendments, and his rights under the First Amendment; (2) the New Jersey Constitution for the violation of S.S.'s right to privacy under Article I, Paragraphs 1 and 7; (3) the NJPRA, IDEA, FERPA and HIPAA; and (4) general negligence principles.  Plaintiffs amended the Complaint on March 23, 2010 to join Julian Johnson, Kevin Stansberry, Principal of Mount Olive High School, and Rosalie Lamonte, the Board's Superintendent, as Defendants.

On August 20, 2010, Defendants moved for summary judgment on all of Plaintiffs'

claims, except those against Mr. Johnson and Mr. Bosch for negligence.  In doing so, they

contend that (1) L.S. and R.S.'s claims in their individual capacities under Section 1983 and the

New Jersey Constitution fail because there is no evidence of a violation of their federal or state

constitutional rights; (2) Plaintiffs' claims under the First and Fourth Amendments fail because

the disclosure of S.S.'s psychiatric evaluation in no way implicates his First or Fourth

Amendment rights; (3) Plaintiffs' claims under Section 1983 for the violation of S.S.'s right to

privacy under the Due Process Clause of the Fourteenth Amendment fail against Mr. Iannucci,

Ms. Strahl, Mr. Stanberry, and Ms. Lamonte, because there is no evidence that they had any

involvement in the disclosure of S.S.'s evaluation; (4) Plaintiffs' claims under Section 1983 for

the violation of S.S.'s right to privacy fail against the Board because there is no evidence of a

policy or custom that led to the disclosure of S.S.'s evaluation; (5) Plaintiffs' claims under

Section 1983 for the violation of S.S.'s right to privacy against Mr. Johnson and Mr. Bosch fail

because their conduct does not shock the conscience; (6) Plaintiffs' claims under the New Jersey

Constitution fail for the same reasons as those under Section 1983; (7) Plaintiffs' claims under

the NJPRA, IDEA, FERPA, and HIPAA fail because the NJPRA, FERPA, and HIPAA do not

provide for a private right of action, while the IDEA does not provide for an action for damages;

(8) L.S. and R.S.'s negligence claims fail because neither can establish that they were owed a

duty of care; (9) Plaintiffs' negligence claims against Mr. Iannucci, Ms. Strahl, Mr. Lansberry,

and Ms. Lamonte fail because there is no evidence that they played any part in the disclosure of

S.S.'s evaluation, or were subject to *respondeat superior* liability; and (10) Plaintiffs' negligence

claims against the Board fail because Plaintiffs failed to specifically plead a theory *respondeat*

*superior* liability as required by the New Jersey Tort Claims Act.

On September 20, 2010, Plaintiffs cross-moved for partial summary judgment in favor of their claims under Section 1983 against Mr. Johnson and Mr. Bosch, as well as those for negligence against all Defendants.  In doing so, they argue that (1) the undisputed evidence indicates that Mr. Johnson's and Mr. Bosch's conduct deprived S.S. of his right to privacy under the Due Process Clause of the Fourteenth Amendment; (2) Defendants' violation of the NJPRA, IDEA, FERPA, and HIPAA constitute negligence *per se* because S.S. is in the class of persons that those statutes were intended to protect.

## II.  DISCUSSION

The parties' cross-motions give rise to the following issues: (1) whether the disclosure of S.S.'s psychiatric evaluation implicates S.S.'s constitutional rights under the First and Fourth Amendments; (2) whether Mr. Iannucci, Ms. Strahl, Mr. Stansberry, and Ms. Lamonte had any personal involvement, knowledge of, or acquiescence in the disclosure of S.S.'s evaluation; (3) whether the Board maintained a policy or custom, or exhibited a failure to train or supervise, that indicates a deliberate indifference towards S.S.'s constitutional rights; (4) whether Mr. Bosch's and Mr. Johnson's conduct in disclosing S.S.'s evaluation rises above mere negligence; (5) whether Plaintiffs' claims under provisions of the New Jersey Constitution should be analyzed in the same way as those under the United States Constitution; (6) whether defendants breached a duty of care owed to L.S. and R.S.; (7) whether Mr. Iannucci, Ms. Strahl, Mr. Stansberry, and Ms. Lamonte breached a duty of care owed to S.S.; (8) whether Plaintiffs properly stated a claim against the Board under the New Jersey Tort Claims Act; (9) whether Defendants' violations of the NJPRA, IDEA, FERPA, and HIPAA merit a finding of negligence *per se*; and (10) whether a reasonable juror could find that Mr. Johnson and Mr. Bosch did not breach a duty of care owed to S.S. in disclosing his evaluation.

A.      **Standard of Review**

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Id. Disputes over irrelevant or unnecessary facts will not preclude granting summary judgment.

The party moving for summary judgment has the burden of showing that no genuine dispute of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of proof at trial, it may discharge its burden under the summary judgment standard by showing that there is an absence of evidence to support the non-moving party's case. Id. at 325. If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine factual dispute exists and a trial is necessary. Id. at 324. In meeting its burden, the non-moving party must offer specific facts that establish a material dispute, not simply create "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The Court's function, however, is not to weigh the evidence and rule on the truth of the matter, but rather to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If there are no issues that require a trial, then judgment as a matter of law is appropriate. Id. at 251-52.

**B.     L.S. and R.S.'s Individual Claims under Section 1983**

Defendants argue that R.S. and L.S. cannot assert claims under Section 1983 in their individual capacities because they fail to establish a prima facie under the statute.[2]  Plaintiffs do not argue to the contrary.

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  42 U.S.C. § 1983

Section 1983 does not create substantive rights; rather "it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws."  Kneip v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  In order to establish a prima facie case, a plaintiff must show that (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of his rights, privileges, or immunities secured by the Constitution or laws of the United States.  Powell v. Ridge, 189 F.3d 387, 400 (3d Cir.1999).

Judging from (1) Plaintiffs' failure to respond to Defendants arguments; (2) a complete lack of evidence in the record of a violation of R.S. or L.S.'s constitutional rights; and (3)

---

[2] Defendants also argue that that "[t]o the extent that R.S. and L.S. attempt to assert a loss of consortium or services claim for the alleged violation of their son's constitutional rights, such a claim fails as a matter of law" because "loss of consortium claims are not cognizable in § 1983 suits."  (Def.'s Br. Summ. J. 7.)  There is no indication in Plaintiffs' Amended Complaint or current motion papers that L.S. and R.S. assert a claim for loss of consortium or services resulting from the violation of S.S.'s constitutional rights under Section 1983.  Nonetheless, Defendants are correct that loss of consortium claims cannot be brought under Section 1983.  Guten v. Washington Twp. Bd. of Educ., 467 F. Supp. 2d 414, 430 (D.N.J. 2006).

Plaintiffs' failure to allege a violation of R.S. or L.S.'s constitutional rights in the Amended

Complaint, it is unclear whether L.S. and R.S. ever intended to set forth claims under Section

1983 in their individual capacties.  Nonetheless, to the extent that L.S. and R.S. maintain such

claims, they are dismissed.

**C.    Plaintiffs' Claim under Section 1983 for the Violation of S.S.'s First Amendment
Rights**

Defendants correctly argue that Plaintiffs' claims under Section 1983 for the violation of

S.S.'s First Amendment rights must be dismissed because the Amended Complaint fails to allege

that Defendants violated S.S.'s right to "associate with others in pursuit of political, social,

economic, educational, religious, or cultural ends."  (Def.'s Br. Summ. J. 8.); see also Boy

Scouts of Am. v. Dale, 530 U.S. 640, 647 (2000).  Plaintiffs do argue to the contrary.  Indeed, the

Amended Complaint in no way alleges a basis on which to find that Defendants violated S.S.'s

rights under the First Amendment.  Nor is there any evidence in the record indicating a First

Amendment violation. Accordingly, Plaintiffs' claims under Section 1983 for the violation of

S.S.'s First Amendment rights are dismissed.

**D.    Plaintiffs' Claim under Section 1983 for the Violation of S.S.' Fourth Amendment
Rights**

Defendants also correctly argue that Plaintiffs' claims under the Fourth Amendment must

be dismissed because "the disclosure of a student's confidential record by school district

employees does not implicate Fourth Amendment rights."  (Def.'s Br. Summ. J. 9.)  Plaintiffs do

not argue to the contrary.  The Amended Complaint does not allege an unreasonable search or

seizure.  See Katz v. United States, 389 U.S. 347, 350 (1967) ("[T]he Fourth Amendment cannot

be translated into a general constitutional 'right to privacy.'").  Nor is there any evidence in the

record of a Fourth Amendment search or seizure.  Accordingly, Plaintiffs' claims under Section 1983 for the violation of S.S.'s Fourth Amendment rights are dismissed.

**E.**     **Plaintiffs' Claims under Section 1983 against Mr. Iannucci, Ms. Strahl, Mr. Stansberry, and Ms. Lamonte for the Violation of S.S.'s Constitutional Right to Privacy**

Defendants argue that Plaintiffs' claims under Section 1983 against Mr. Iannucci, Ms. Strahl, Mr. Stansberry, and Ms. Lamonte for the violation of S.S.'s constitutional right to privacy under the Due Process Clause of the Fourteenth Amendment must fail because there is no evidence in the record that they "participated in, or had foreknowledge and acquiesced in, a violation of S.S.'s privacy rights."  (Def.'s Br. Summ. J. 10.)  Plaintiffs counter that they do not seek to hold Mr. Iannucci, Ms. Strahl, Mr. Stansberry, or Ms. Lamonte liable under Section 1983 based on a theory of supervisory liability.  Rather, they maintain that "each had a specific duty to prevent the disclosure of S.S.'s psychiatric evaluation," and that "[t]he breaches of their respective duties set in motion and proximately caused" the disclosure of S.S.'s psychiatric evaluation.  (Pl.'s Br. Summ. J. 22.)

Plaintiffs cite to Williams v. Pennsylvania State Police-Bureau of Liquor Control Enforcement, 144 F. Supp. 2d 382 (E.D.Pa. 2001) for the proposition that a defendant may be found liable under Section 1983 for either (1) direct, personal involvement in the alleged constitutional violation, or (2) actions or omissions that are not constitutional violations in themselves, but foreseeably lead to a constitutional violation.  144 F. Supp. 2d at 383 (citing Arnold v. IBM Corp., 637, F.2d 1350, 1355 (9th Cir. 1981)).  Applying this proposition, Plaintiffs argue that Mr. Iannucci, Mr. Stansberry, and Ms. Lamonte are liable under Section 1983 for the violation of S.S.'s constitutional right to privacy because their actions and omissions

"set in motion a series of events which they should have known . . . would reasonably lead to the disclosure of S.S.'s psychiatric evaluation."  (Pl.'s Br. Summ. J. 22.)

However, the Court of Appeals has not adopted the 9th Circuit's standard articulated in Arnold.  Indeed, it has exclusively held that an individual "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."  Atkinson v. Taylor, 316 F.3d 257, 270 (3d Cir. 2003) (quoting Rhode v. Delarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).  "Personal involvement can be shown through allegations of personal direction or of actual knowledge or acquiescence." Id.

Here, Plaintiffs allege that Mr. Iannucci, Mr. Stansberry, and Ms. Lamonte each owed a duty to ensure the confidentiality of student records.  They further allege that Iannucci, Lamonte, and Stansberry breached this duty by failing to adequately educate and train Mount Olive faculty and staff in the importance and implementation of the Board's privacy policy.  As a result, Plaintiffs maintain that these failures proximately caused the disclosure of S.S.'s psychiatric evaluation.

However, these allegations in no way indicate any level of personal direction, actual knowledge, or acquiescence in the disclosure of S.S.'s evaluation.  Therefore, Plaintiffs' claims under Section 1983 against Mr. Iannucci, Ms. Strahl, Mr. Stansberry, and Ms. Lamonte for the violation of S.S.'s right to privacy are dismissed.[3]

**E.     Plaintiffs' Claim under Section 1983 against the Board for the Violation of S.S.'s Constitutional Right to Privacy**

---

[3] Surprisingly, Plaintiffs fail to oppose Defendants' argument with respect to Ms. Strahl, who was, in fact, co-teaching the class in which S.S.'s psychiatric evaluation was disclosed. However, without evidence of Ms. Strahl's personal direction, actual knowledge, or acquiescence in the disclosure of S.S.'s evaluation, Plaintiffs' claims under Section 1983 against her must also be dismissed.

Defendants argue that Plaintiffs cannot assert a claim under Section 1983 against the Board for the violation of S.S.'s constitutional right to privacy because there is no causal connection between the disclosure of S.S.'s psychiatric evaluation and a policy, practice, custom, or failure to train or supervise, that demonstrates a deliberate indifference towards the constitutional rights of students.  Plaintiffs, on the other hand, maintain that the Board's customary failure "to implement and follow its own policies regarding student confidentiality" led to the disclosure of S.S.'s evaluation.  (Pl.'s Br. Summ. J. 23.)  Plaintiffs also maintain that the Board's failure to adequately train its employees and personnel in the Board's privacy policy exhibits a deliberate indifference to S.S.'s constitutional right to privacy.

In contrast to the concept of individual liability discussed in Point D, a local government entity, such as a school board, may be held liable under Section 1983 for a constitutional violation if it occurred as a result of a policy or custom established or approved by that entity. C.H. v. Oliva, 226 F.3d 198, 202 (3d Cir. 2000) (citing Monell v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 658 (1978)).  The policy or custom must also have been the proximate cause of the constitutional violation.  Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996). "If the policy or custom does not facially violate federal law, causation can be established only by demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequences. . . . A showing of simple or even heightened negligence will not suffice."  Chambers v. Sch. Dist. of Philadelphia, 587 F.3d 176, 193 (3d Cir. 2009).

Such entities may also be liable under Section 1983 if they fail to supervise or train their employees or personnel, and such failure exhibits a "deliberate indifference to the rights of persons" with which they come into contact.  Simmons v. City of Philadelphia, 947 F.2d 1042, 1060 (3d Cir. 1991) (citing City of Canton v. Harris, 489 U.S. 378 (1989)).

### i.   *The Board's Custom*

In the context of municipal liability under Section 1983, in order to understand the meaning of a custom, it is important first to understand the meaning of a policy.  A policy is an "official proclamation, policy, or edict" made by "a decisionmaker with final authority" to do so. Beck, 89 F.3d at 971 (internal quotations and citations omitted).  In contrast, a custom is "a course of conduct . . . though not authorized by law . . . [that] is so permanent and well-settled as to virtually constitute law."  Id.  A custom "may also be established by evidence of knowledge and acquiescence."  Id.

In Natale v. Camden County Corr. Facility, 318 F.3d 575 (3d Cir. 2003), the Court of Appeals distinguished three categories of municipal employee conduct that may be found to be the result of a policy or custom of the municipal entity employer, thereby rendering the entity liable under Section 1983.  The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy."  Natale, 318 F.3d at 584.  The second occurs when "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Id.  The third arises where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'"  Id. (footnote and citations omitted).

Here, Plaintiffs' allegations do not fall into either category.  Plaintiffs allege a "long-standing systemic failure of the district . . . [to] implement and follow its own policies regarding student confidentiality" that, in turn, "set the stage" for the disclosure of S.S.'s psychiatric

evaluation.  (Pl.'s Br. Summ. J. 23.)  These allegations do not fall into the first category because

the disclosure of S.S.'s psychiatric evaluation was not an attempt to implement the Board's

policy to maintain the confidentiality of student records.  They do not fall into the second

category because it is undisputed that Board maintained a privacy policy to maintain the

confidentiality of student records.

Finally, Plaintiffs' allegations do not fall into the third category because there is no

evidence that the Board failed to take any action to remedy an obvious inadequacy of its existing

practice in maintaining the confidentiality of student records, much less one that exhibits a

deliberate indifference.  Indeed, Plaintiffs do not argue that the Board failed to act affirmatively

at all to maintain the confidentiality of student records.  Instead, they attack the means by which

the Board attempted to do so.  They point to (1) instances where certain defendants in this case

were unable to recall specific provisions of the privacy policy or identify where they could find

the policy at their depositions; (2) instances where authority to maintain the confidentiality of

student records was delegated to certain personnel of the Board that did not receive personal

training in the privacy policy; (3) instances where the written agendas of certain faculty meetings

did not specifically refer to maintaining the confidentiality of student records or the privacy

policy; and (4) the absence of a clear reference to the privacy policy or student record

confidentiality in the faculty handbook.

While Plaintiffs may disagree with the methods used by the Board to maintain the

confidentiality of student records, the Court cannot find that those methods are so obviously

inadequate as to exhibit a deliberate indifference towards the constitutional rights of students.[4]

---

[4] Plaintiffs also point to the corrective action plan initiated by the Board in April 2002 "to
address concerns regarding the signing of access sheets to confidential student records."  (Pl.'s
Br. Summ. J. 11.)  On that basis, they argue that the April 2002 plan must not have been

Therefore, the Board is not liable under Section 1983 for the violation of S.S.'s right to privacy as a result of a custom.

### ii. The Board's Training

In order to show that an entity's failure to train or supervise exhibits a deliberate indifference to a person that has been deprived of his constitutional rights, a plaintiff must (1) identify a specific supervisory practice that the entity failed to employ; (2) establish contemporaneous knowledge of the offending incident or a prior pattern of similar incidents; and (3) show circumstances under which the supervisor's action or inaction could have been found to have communicated a message of approval.  C.H., 226 F.3d at 202 (internal quotations and citations omitted).

Conversely, a mere showing (1) of the shortcomings of an individual; (2) that an otherwise sound training program occasionally was negligently administered; or (3) without more, that better training would have enabled an officer to avoid the injury-causing conduct does not rise to the level of deliberate indifference.  Simmons, 947 F.2d at 1060 (internal citations omitted).

Here, there is no evidence, nor do Plaintiffs even allege, that one of Mr. Johnson's or Mr. Bosch's supervisors had contemporaneous knowledge of the disclosure of S.S.'s psychiatric evaluations or a prior pattern of similar disclosures.  There is also no evidence or allegation that one of Mr. Bosch's or Mr. Johnson's supervisors communicated a message of approval in the disclosure of S.S.'s psychiatric evaluation.

Rather, Plaintiffs' allegations fit squarely into the categories of what does *not* rise to the level of deliberate indifference, namely that (1) Ms. Lamonte never read the Board's privacy

---

followed due to the disclosure of S.S.'s psychiatric evaluation on October 21, 2008.  This is a conclusory argument that is not supported by the record.

policy; (2) she failed to personally train Iannucci in the privacy policy so that he could, in turn, properly train Bosch and Johnson in maintaining the confidentiality of student records; and (3) the training sessions conducted by Iannucci to maintain the confidentiality of student records were inadequate.  Accordingly, the Board cannot be held liable under Section 1983 for the violation of S.S.'s right to privacy as a result of a failure to supervise or train.

**F.   Plaintiffs' Claims under Section 1983 against Mr. Johnson and Mr. Bosch for the Violation of S.S.'s Constitutional Right to Privacy**

Defendants argue that Plaintiffs' claims under Section 1983 against Mr. Johnson and Mr. Bosch for the violation of S.S.'s constitutional right to privacy must fail because their actions do not "shock the conscience" (Def.'s Br. Summ. J. 18), as required to maintain a claim for individual liability under Section 1983 for a violation of the Due Process Clause of the Fourteenth Amendment.  They contend that Mr. Johnson's and Mr. Bosch's conduct amounts to mere negligence and therefore cannot rise to the level of a constitutional violation.  Plaintiffs argue that they need not show that Mr. Johnson's and Mr. Bosch's actions "shock the conscience" because they are not alleging a general substantive due process claim, but rather one for the violation of S.S.'s constitutional right to privacy in his medical records.  As a result, Plaintiffs maintain they are entitled to partial summary judgment on their claims under Section 1983 against Mr. Johnson and Mr. Bosch, because the undisputed evidence shows that they violated S.S.'s constitutional right to privacy.

An individual has a constitutional right to privacy under the Due Process Clause of the Fourteenth Amendment which protects "the individual interest in avoiding disclosure of personal matters."  Doe v. Delie, 257 F.3d 309, 315 (3d Cir. 2001) (citing Whalen v. Roe, 429 U.S. 589, 599 (1977)).  In this vein, the Court of appeals has long recognized the right to privacy in one's medical information.  Id. ("There can be no question that . . . medical records, which may

contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection" quoting United States v. Westinghouse Elec. Corp., 638 F.2d 570, 577 (3d Cir. 1980)). Thus, it is clear that S.S. has a constitutionally protected right to privacy in his psychiatric evaluation under the Due Process Clause of the Fourteenth Amendment.

To be sure, "mere negligence is insufficient to trigger constitutional liability" under the Due Process Clause of the Fourteenth Amendment. Fagan v. City of Vineland, 22 F.3d 1296, 1305 (3d Cir. 1994) (citing Daniels v. Williams, 474 U.S. 327, 328 (1988)). Relying on Fagan, Defendants argue that "substantive due process can be violated by governmental employees only when their conduct amounts to an abuse of official power that 'shocks the conscience.'" (Def.'s Br. Summ. J. 18.) However, the Court of Appeals has limited the "shocks the conscience" standard to cases where plaintiffs are pursuing a "state-created danger theory of liability" under Section 1983 for violations of the Due Process Clause of the Fourteenth Amendment.[5] See Brown v. Commw. Of Pennsylvania Dept. Of Health Emergency Medical Services Training Institute, 318 F.3d 473, 479-80 (3d Cir. 2003). Defendants have cited no authority applying the "shocks the conscience" standard to a claim under Section 1983 for the violation of *the right to privacy* under the Due Process Clause of the Fourteenth Amendment. Nor is the Court aware of any such authority. Therefore, it sees no reason to apply the "shocks the conscience" standard here.

In their reply brief, Defendants cite to Weisberg v. Riverside Twp. Bd. of Educ., 180 Fed. Appx. 357 (3d Cir. 2006). In that case, a school district official inadvertently placed the

---

[5] Under a state-created danger theory of liability, plaintiffs must show that (1) the harm ultimately caused was foreseeable; (2) the state actors acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; and (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party to cause harm. Brown, 318 F.3d at 479 (citing Kneipp v. Tedder, 95 F.3d 1199, 1208 (3d Cir. 1996)). Plaintiffs are not pursuing this theory here.

plaintiff's employee incident report, which contained certain medical information, in an envelope that was given to another employee.  Weisberg, 180 Fed. Appx. at 365.  The Court of Appeals found that the inadvertent disclosure of medical information does not rise to the level of a constitutional violation, because "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property."  Id. (quoting Daniels, 474 U.S. at 328)).

Here, on the other hand, the undisputed evidence shows that the disclosure of S.S.'s psychiatric evaluation was wholly intentional.  Indeed, Mr. Bosch approached Mr. Johnson to ask for a sample psychological or psychiatric report to use as a teaching tool with Ms. Strahl's students.  In response, Mr. Johnson provided him with a copy of S.S.'s psychiatric evaluation, knowing full well what was in it.  While Mr. Bosch redacted certain information from the evaluation, in a feeble attempt to conceal S.S.'s identity, he knowingly disclosed substantial portions of S.S.'s medical information to the seventeen students in Ms. Strahl's English class.  Therefore, Plaintiffs are entitled to summary judgment in favor of the liability portions of their claims under Section 1983 against Mr. Bosch and Mr. Johnson for the violation of S.S.'s constitutional right to privacy, because no reasonable juror could find that their conduct in disclosing S.S.'s evaluation amounted to mere negligence.

**G.     Plaintiffs' Claims for Violations of the New Jersey Constitution**

Although it goes unmentioned in the parties' moving papers and the Amended Complaint, the New Jersey Civil Rights Act of 2004, N.J.S.A. 10:6-2, provides the basis of Plaintiffs' cause of action for violations of the New Jersey Constitution—allowing any person who has been deprived of any "substantive rights, privileges or immunities secured by the Constitution or laws of the United States . . . [or those] secured by the Constitution or laws of

this State" to bring a civil action for damages and for injunctive or other appropriate relief."

N.J.S.A. 10:6-2(c); <u>Matthews v. New Jersey Ins. of Tech.</u>, 717 F. Supp. 2d 447, 451 (D.N.J.

2010).  Defendants assert a number of arguments in support of dismissing Plaintiffs'

constitutional claims.  Each will be taken in turn.

### i.      *R.S. and L.S.'s Individual Claims*

As in Point B, Defendants argue that L.S. and R.S. cannot assert claims in their individual

capacities for violations of the New Jersey Constitution because they fail to allege a direct

violation of their rights thereunder.  Plaintiffs do not argue to the contrary.

Again, Judging from (1) Plaintiffs' failure to respond to Defendants arguments; (2) a

complete lack of evidence in the record of a violation of R.S. or L.S.'s constitutional rights; and

(3) Plaintiffs' failure to allege any violation of R.S. or L.S.'s constitutional rights in the

Amended Complaint, it is unclear whether L.S. and R.S. themselves intended to set forth claims

in their individual capacities.  Nonetheless, to the extent that L.S. and R.S. maintain such claims,

they are dismissed.

### ii.      *Plaintiffs' Claims for Violations of Article I, Paragraph 7*

As in Point C, Defendants argue that Plaintiffs' claims for violations of Article I,

Paragraph 7 of the New Jersey Constitution should be dismissed because Paragraph 7 only

relates to searches and seizures by government actors.  Plaintiffs concede this point and state that

they are "no longer pursuing a claim under New Jersey Constitution, Article I, Paragraph 7."

(Pl.'s Br. Summ. J. Note 11.)  Accordingly, Plaintiffs' claims for violations of Article I,

Paragraph 7 of the New Jersey Constitution are dismissed.

### iii.      *Plaintiffs' Claims for Violations of  Article I, Paragraph 1*

The parties do not dispute that Article I, Paragraph 1 of the New Jersey Constitution bestows the right to substantive due process and privacy.  See Sojourner A. v. New Jersey Dept. of Human Services, 177 N.J. 318, 332 (2003).  However, Defendants argue that Plaintiffs' claims for the violation of S.S.'s right to privacy thereunder should be dismissed for the reasons asserted in support of dismissing Plaintiffs' claims under Section 1983 for the violation of S.S.'s right to privacy under the Due Process Clause of the Fourteenth Amendment.  Plaintiffs counter with the same arguments set forth in support of these claims.

Claims under the New Jersey Constitution that implicate cognate provisions in the United States Constitution are to be analyzed under authority relating to the federal provisions. Sojourner A., 177 N.J. at 332; see also Roman Check Cashing Inc. v. New Jersey Dept. of Banking and Ins., 169 N.J. 105, 110 (2001).  Here, Plaintiffs' claims for the violation of S.S.'s right to privacy under of Article I, Paragraph 1 of the New Jersey Constitution run parallel to those under Section 1983 for violations of S.S.'s right to privacy under the Due Process Clause of the Fourteenth Amendment.  Furthermore, Article I, Paragraph 1 of the New Jersey constitution does not provide greater rights than the Fifth or Fourteenth Amendment of the Untied States Constitution.  Ferraro v. Long Branch, 314 N.J. Super. 268, 286 (App. Div. 1998), cert. denied, 157 N.J. 541 (1998).  Accordingly, Plaintiffs' claims for the violation of S.S.'s right to privacy under Article I, Paragraph 1 of the New Jersey Constitution will be analyzed in the same manner as those under the Due Process Clause of the Fourteenth Amendment.

1.   Plaintiffs' Claims against Mr. Iannucci, Ms. Strahl, Mr. Stansberry,<br>and Ms. Lamonte

In Point E, the Court analyzed and dismissed Plaintiffs' claims against Mr. Iannucci, Ms. Strahl, Mr. Stansberry, and Ms. Lamonte under Section 1983 for the violation of S.S.'s right to privacy under the Due Process Clause of the Fourteenth Amendment.  Therefore, Plaintiffs'

claims against them for the violation of S.S.'s right to privacy under Article I, Paragraph 1 of the New Jersey Constitution are dismissed for the reasons set forth in Point E.  See Sojourner A., 177 N.J. at 332

### 2.  Plaintiffs' Claims against the Board

In analyzing municipal liability for claims under the New Jersey Constitution, courts have specifically adopted the Monell standard applied in the context of claims under Section 1983.  Lloyd v. Borough of Stone Harbor, 179 N.J. Super. 496, 517 (Ch. Div. 1981), overruled on other grounds by Fuchilla v. Layman, 109 N.J. 319 (1988).  In Point F, the Court analyzed and dismissed Plaintiffs' claims against the Board under the Monell standard.  Accordingly, Plaintiffs' claims against the Board for the violation of S.S.'s right to privacy under Article I, Paragraph 1 of the New Jersey Constitution are dismissed for the reasons set forth in Point F.

### 3.  Plaintiffs' Claims against Mr. Johnson and Mr. Bosch

In Point G, the Court analyzed Plaintiffs' claims against Mr. Johnson and Mr. Bosch under Section 1983 for the violation of S.S.'s right to privacy under the Due Process Clause of the Fourteenth Amendment and found that Plaintiffs were entitled to summary judgment on the liability portions of those claims.  Accordingly, Plaintiffs are entitled to summary judgment in favor of the liability portions of their claims against Mr. Johnson and Mr. Bosch for the violation of the right to privacy under Article I, Paragraph 1 of the New Jersey Constitution for the reasons set forth in Point G.

## H.      Plaintiffs' Claims under the NJPRA IDEA, FERPA, and HIPAA

Defendants correctly argue, and Plaintiffs concede, that Plaintiffs' claims under the NJPRA, IDEA, FERPA, and HIPAA fail because monetary damages are not available under the IDEA, A.W. v. Jersey City Pub. Sch., 486 F.3d 791, 803 (3d Cir. 2007), and the NJPRA,

FERPA, and HIPAA do not provide for a private right of action.  See N.J.A.C. 18A:36-19,

6A:32-7.1 (NJPRA);  Gonzaga Univ. v. Doe, 536 U.S. 273, 290 (2002) (FERPA); Merling v.

Horizon Blue Cross Blue Shield of New Jersey, No. 04-4026, 2009 WL 2382319, at n. 1 (D.N.J.

July 31, 2009) (HIPAA).  Accordingly, Plaintiffs' claims under the NJPRA, IDEA, FERPA, and

HIPAA are dismissed.

## I.        Plaintiffs' Negligence Claims

Defendants seek to dismiss all of Plaintiffs' negligence claims, except those on behalf of

S.S. against Mr. Johnson and Mr. Bosch.  In doing so, they set forth several arguments that are

discussed below.  Plaintiffs, on the other hand, argue that they are entitled to partial summary

judgment on all their negligence claims because Defendants' violations of the NJPRA, IDEA,

FERPA, and HIPAA constitute negligence *per se*.

### i.    *L.S. and R.S.'s Claims*

Defendants argue that L.S. and R.S.'s negligence claims in their individual capacities

should be dismissed because they fail to allege an independent tort or *per quod* claim.  Plaintiffs

do not respond.  It is unclear whether L.S. and R.S. themselves intend to set forth negligence or

*per quod* claims.  Plaintiffs' Amended Complaint does not specifically allege that Defendants

breached a duty owed, or caused damage to, R.S. and L.S.  Nor does it allege a loss of

consortium or services.  Therefore, to the extent that L.S. and R.S. maintain negligence or *per

quod* claims in their individual capacities, those claims are dismissed.

### ii.     *Claims against Mr. Iannucci, Ms. Strahl, Mr. Stansberry, and Ms. Lamonte*

Defendants correctly argue that Plaintiffs' negligence claims against Mr. Iannucci, Ms.

Strahl, Mr. Stansberry, and Ms. Lamonte should be dismissed because there is no evidence that

any of them (1) played any part in the disclosure of S.S.'s psychiatric evaluation; (2) had any

control over the actions of Mr. Johnson and Mr. Bosch, see Carter v. Reynolds, 175 N.J. 402, 409 (2003) (to establish tort liability under the theory of *respondeat superior*, "a plaintiff must prove that a master-servant relationship existed and that the tortous act of the servant occurred within the scope of that employment"); or (3) knew or had reason to know of any risk that S.S.'s evaluation would be disclosed, see Alloway v. Bradlees, Inc., 157 N.J. 221, 230 (1999) ("A major consideration in the determination of the existence of a duty of reasonable care under general negligence principles is the foreseeability of the risk of injury").  Plaintiffs do not argue to the contrary.[6]  Therefore, Plaintiffs' negligence claims against Mr. Iannucci, Ms. Strahl, Mr. Stansberry, and Ms. Lamonte are dismissed.

### iii.    Claims against the Board

The New Jersey Tort Claims Act holds public entities liable for negligence in the performance of ministerial functions, while granting them immunity for injuries resulting from the exercise of vested judgment or discretion.  N.J.S.A. 59:2-3(a); Coyne v. State, Dept. of Transp., 182 N.J. 481, 489 (2005).  "[T]he exercise of ... discretion in N.J.S.A. 59:2-3(a) refers to actual, high-level policymaking decisions involving the balancing of competing considerations.  Such decisions have been traditionally entrusted to coordinate branches of government."  Coyne, 182 N.J. at 489 (internal quotations and citations omitted).

While conceding that there is a material issue as to whether the disclosure of S.S.'s psychiatric evaluation was in furtherance of a ministerial act, Defendants contend that Plaintiffs' negligence claims against the Board should be dismissed under the Act because Plaintiffs failed

---

[6] As discussed in Points F and G, in arguing that Mr. Iannucci, Ms. Stansberry, and Ms. Lamonte should be held liable under Section 1983 for the violation of S.S.'s right to privacy under the Due Process Clause of the Fourteenth Amendment, Plaintiffs set forth a number of allegations contesting the adequacy of training in and implementation of the Board's privacy policy in order to maintain confidentiality of student records.  However, Plaintiffs do not make these allegations in support of their negligence claims.

to assert a negligence claim against the Board under a theory of *respondeat superior*.  Plaintiffs do not argue to the contrary.[7]

The New Jersey Tort Claims Act provides a private cause of action for an "injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances."  N.J.S.A. 59:2-2(a).  However, "[t]he guiding principle of the Tort Claims Act is that immunity from tort liability is the general rule and liability is the exception."  Coyne, 182 N.J. at 488 (internal quotations and citations omitted).   As such, the Act requires that negligence claims against public entities for the acts of their employees pled specifically under a theory of *respondeat superior*, as opposed to one of direct liability.  Myers v. Medford Lakes Bd. of Educ., 199 N.J. Super. 511, 516 (App. Div. 1985).

In the Amended Complaint, Plaintiffs pursue direct negligence claims against the Board instead of those under a theory of *respondeat superior*.  Therefore, Plaintiffs' negligence claims against the Board are dismissed.

### iv.    Negligence Per Se

Plaintiffs argue that the Court should grant summary judgment in favor of their negligence claims against all Defendants because their violations of the NJPRA, IDEA, FERPA, and HIPAA constitute negligence *per se* under Alloway.  Defendants concede that those statutes may be considered when assessing a negligence claim, but maintain that there is no reason to find negligence *per se* in this case, as Plaintiffs have cited no authority indicating that such a finding is appropriate.

---

[7] Plaintiffs instead argue that a finding that the disclosure of S.S.'s psychiatric evaluation was in furtherance of the exercise of judgment or discretion should not preclude tort liability under the Act in this case.

The <u>Alloway</u> court adopted "the well-established principle that the violation of a legislative standard of conduct may be regarded as evidence of negligence if the plaintiff was a member of the class for whose benefit the standard was established." 157 N.J. at 236 (citations omitted). In addition, the court noted that:

> [w]hen a legislative provision proscribes or requires certain conduct for the benefit of a class of persons but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.

> <u>Id.</u> at 235 (quotations and citations omitted).

Here, Plaintiffs merely allege that they are in the class of persons that the IDEA, NJPRA, FERPA, and HIPAA were designed to protect. They make no showing whatsoever that a finding of negligence *per se* is appropriate to further the purpose and assure the effectiveness of either statute. Nor is the Court otherwise persuaded to make such a finding.

Nonetheless, the undisputed evidence indicates that Mr. Johnson and Mr. Bosch's conduct in disclosing S.S.'s psychiatric evaluation breached a duty of care to maintain the confidentiality of S.S.'s student records. See <u>Polzo v. County of Essex</u>, 196 N.J. 569, 584 (2008) ("In order to sustain a common law cause of action in negligence, a plaintiff must show prove four core elements: (1) [a] duty of care, (2) [a] breach of [that] duty, (3) proximate cause, and (4) actual damages").

To be sure, there remains a material dispute regarding causation and damages. Nevertheless, Plaintiffs are entitled to summary judgment in favor of the liability portion of their negligence claims against Mr. Bosch and Mr. Johnson because no reasonable juror could find that they did not breach their duty to maintain the confidentiality of S.S.'s student records.

### III.  CONCLUSION

For the foregoing reasons, both Defendants' and Plaintiffs' Motions for Summary Judgment are GRANTED in part and DENIED in part.  The Court rules as follows:

(1) R.S. and L.S.'s claims in their individual capacities are dismissed with prejudice;

(2) Plaintiffs' claims under Section 1983 for violations of the First and Fourth Amendments are dismissed with prejudice;

(3) Plaintiffs' claims under Section 1983 and the New Jersey Constitution against the Board, Michael Iannucci, Audrey Strahl, Kevin Stansberry, and Rosalie Lamonte for violations of S.S.'s federal and state constitutional right to privacy are dismissed with prejudice;

(4) Summary judgment is granted in favor of the liability portions of Plaintiffs' claims under Section 1983 and the New Jersey Constitution against Christopher Bosch and Julian Johnson for violations of S.S.'s federal and state constitutional right to privacy;

(5) Plaintiffs' claims for violations of Article I, Paragraph 7 of the New Jersey Constitution are dismissed with prejudice;

(6) Plaintiffs' claims against the Board, Michael Iannucci, Audrey Strahl, Kevin Stansberry, and Rosalie Lamonte for violations of S.S.'s right to privacy under Article I, Paragraph 1 of the New Jersey Constitution are dismissed with prejudice;

(7) Summary judgment is granted in favor of the liability portions of Plaintiffs' claims against Christopher Bosch and Julian Johnson for violations of S.S.'s right to privacy under Article I, Paragraph 1 of the New Jersey Constitution;

(8) Plaintiffs' negligence claims against the Board, Michael Iannucci, Audrey Strahl, Kevin Stansberry, and Rosalie Lamonte are dismissed with prejudice;

(9)  Summary judgment is granted in favor of the liability portions of Plaintiffs'

negligence claims against Christopher Bosch and Julian Johnson.

The Court will enter an order implementing this opinion.


**/s/ Dickinson R. Debevoise_____**
DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated: February 25, 2011